UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                                         Plaintiff,

                                                              CRIMINAL CASE NO. 05-50062

v.

RICKEY DONNEL SMITH,                                  HONORABLE PAUL V. GADOLA
                                                              U.S. DISTRICT COURT

                                         Defendant.
_____/

## ORDER DENYING MOTION TO SUPPRESS

Defendant Rickey Donnel Smith is charged with one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Before the Court is Defendant's motion to suppress evidence, filed on March 16, 2006. After obtaining transcripts of evidentiary hearings held in this matter, the parties submitted supplemental briefs and presented oral arguments. For the reasons stated below, the Court will deny the motion to suppress.

## I.      Background

Defendant is a state inmate serving a fifteen to thirty year prison sentence under the authority of the Michigan Department of Corrections. As part of his sentence, Defendant was permitted to leave the prison and reside in the home of his sister at 313 Odette St., Flint, Michigan. Pursuant to his confinement, Defendant was required to be on an electronic tether.

On July 21, 2004, acting on a tip that Defendant possessed drugs and firearms in violation of the conditions of Defendant's confinement, a Michigan state trooper and a state corrections agent went to the residence where Defendant was staying. After Defendant's sister answered the door, the law enforcement officials identified themselves and asked to see Defendant. Defendant's sister

alleges that she left the front door in order to retrieve Defendant, while the law enforcement officials allege that they requested her to stay at the door and to not go back into the house. The law enforcement officials also allege that Defendant's sister closed the door in their faces and locked the door. When Defendant's sister left the vicinity of the front door, the state trooper then removed the screen on an adjoining open window, entered the house, and unlocked and opened the door for the corrections agent from the inside. Defendant was found inside the residence and the house was searched. A shotgun, a loaded pistol, and marijuana were found.

Defendant now argues that the search of the house was illegal because law enforcement did not have a warrant for the search, did not have sufficient cause to search without a warrant, and violated the knock-and-announce rule. Consequently, Defendant moves to suppress all evidence seized pursuant to the illegal search.

## II.    Analysis

### A.    The Lawfulness of the Warrantless Search

It is undisputed that law enforcement did not have a warrant to search the house where Defendant was staying. "The Fourth Amendment generally prohibits the warrantless entry of a person's home, whether to make an arrest or to search for specific objects." *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990) (citations omitted). In the case of a person on probation or parole, however, there is a lesser standard for warrantless searches. *See Griffin v. Wisconsin*, 483 U.S. 868, 870-71 (1987) (reasonable grounds required for warrantless search of a probationer's home); *United States v. Payne*, 181 F.3d 781, 787 (6th Cir. 1999) (reasonable suspicion required for warrantless search of parolee's home). A person who is an inmate in prison has the lowest standard for

warrantless searches because an inmate has no expectation of privacy and a search can be conducted at any time. *See Hudson v. Palmer*, 468 U.S. 517, 526 (1984) ("[T]he Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell.").

Defendant's expectation of privacy is determined by the nature of his status. In this case, Defendant is not a parolee, nor is he an inmate in prison. Instead, Defendant is an inmate with community status under the Michigan Department of Corrections, held by an electronic tether. As such, Defendant resides in the private home of his sister, while still remaining subject to all the rules and regulations pertaining to an inmate of the Department of Corrections. The parties dispute as to how Defendant's status should be considered. Defendant argues that he should be considered similar to a parolee, while the Government argues that Defendant should be treated as an inmate.

The Court notes that there is very little case law on this topic. However, one court in this District has found, at least for purposes of the Due Process Clause, that the status of an inmate on tether is comparable to the status of a parolee and not to the status of an inmate in prison. *See Sallier v. Makowski*, 2002 WL 31772020, at *8 (E.D. Mich. Nov. 6, 2002) ("[The] placement of an inmate in Michigan's program in which he or she is released from prison and allowed to live at home, even with restrictions which include monitoring by means of an electronic tether, is the functional equivalent of parole . . . ."). In this particular case, the Court declines to make a definitive determination as to whether Defendant's status as an inmate on tether should be considered equivalent to that of an inmate in prison, a parolee, or some kind of hybrid status between the two. As explained below, even when considering Defendant's situation under the higher standard for a parolee, the Court finds no Fourth Amendment violation warranting suppression of the seized

3

evidence. Accordingly, the Court will proceed with the analysis appropriate for searches of residences of parolees.

Conducting a search of the residence of a parolee without a warrant requires reasonable suspicion. *See United States v. Henry*, 429 F.3d 603, 609 (6th Cir. 2005). "Reasonable suspicion is based on the totality of the circumstances and has been defined as requiring 'articulable reasons' and 'a particularized and objective basis for suspecting the particular person . . . of criminal activity.' " *United States v. Payne*, 181 F.3d 781, 788 (6th Cir. 1999) (quoting *United States v. Cortez*, 449 U.S. 411, 417-18 (1981)).

Defendant argues that there is no reasonable suspicion to justify the search of his residence. Law enforcement officials suspected that there were weapons and drugs in Defendant's house because of a tip from a source called "Tonya" who said she was Defendant's ex-girlfriend. Parole Officer Waterman first received the tip from Tonya by telephone stating that Defendant had drugs and guns in his home. Waterman relayed this information to Parole Officer Stanley, Defendant's parole officer, who in turn told the law enforcement team that searched Defendant's residence. Defendant argues that during this chain of hearsay, no one acted to verify the reliability of the tip or the tipster, and thus, there was no reasonable suspicion that there were weapons and drugs in the house contrary to the terms of Defendant's confinement. In response, the Government argues that the tip was recent and was from a named individual having a personal relationship with Defendant asserting serious violations of Department of Corrections rules, and that this was more than enough to establish reasonable suspicion of the presence of weapons and drugs in Defendant's residence.

After considering the evidence and witness testimony, the Court finds that under the totality

of the circumstances, police had sufficient evidence to form a reasonable suspicion that Defendant had weapons and drugs at his residence. The tipster, Tonya, described serious violations of recent occurrence. Also, Tonya described herself as having a close personal relationship with Defendant, being an ex-girlfriend of Defendant. This distinguishes the current case from the anonymous tipster in *Florida v. J.L.*, 529 U.S. 266, 272 (2000), a case relied upon by Defendant, as it tends to show that the tipster Tonya "ha[d] knowledge of concealed criminal activity." *Florida v. J.L.*, 529 U.S. 266, 272 (2000). Accordingly, the Court finds that law enforcement had reasonable suspicion to support the search, and thus, the warrantless search was not in violation of the Fourth Amendment.

**B.       The Violation of the Knock-and-Announce Rule**

Defendant also argues that there was a violation of the knock-and-announce rule. The relevant statute reads: "The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance . . . ." 18 U.S.C. § 3109.

The testimony from both parties agree that law enforcement officials went up to the house and knocked on the door, that Defendant's sister came to answer the door, and that the police asked for Defendant. At this point, the testimonies diverge. The police claim that they told Defendant's sister to remain at the front door, but that the sister disobeyed this command, closed the door in the faces of the police, and went back into the house. In opposition, Defendant's sister testified that she talked to the police through a glass storm door; that she left the vicinity of the front door in order to find Defendant; and that she did not hear the police ask her to wait.

Thus, the question whether there was a violation of the knock-and-announce rule turns on

5

the conflicting testimonies of the police and Defendant's sister.  Defendant argues that there was a violation because the police broke into the house even though they had not been refused admittance. The Government argues, on the other hand, that there was no violation because the police were refused admittance even though they were lawfully permitted to search the house.

The Court finds, however, that regardless of whether there was violation of the knock-and-announce rule, suppression of the evidence is improper.  On June 15, 2006, after Defendant filed his motion to suppress, the Supreme Court of the United States issued a ruling in *Hudson v. Michigan*, 126 S. Ct. 2159 (U.S. 2006), which considered the appropriate remedy for a knock-and-announce violation.  In the case, the Supreme Court decided that a violation of the knock-and-announce rule does not require suppression of evidence:

> In sum, the social costs of applying the exclusionary rule to knock-and-announce violations are considerable; the incentive to such violations is minimal to begin with, and the extant deterrences against them are substantial – incomparably greater than the factors deterring warrantless entries when *Mapp* [*v. Ohio*, 367 U.S. 643, 644 (1961)] was decided.  Resort to the massive remedy of suppressing evidence of guilt is unjustified.

*Hudson v. Michigan*, 126 S. Ct. 2159, 2168 (U.S. 2006).

Defendant attempts to distinguish this recent Supreme Court case by arguing that *Hudson* dealt with a search with a warrant, and that the current situation is a search without a warrant. Defendant's argument, however, is not persuasive.  After a review of the *Hudson* case, the Court finds that the reasoning of the Supreme Court can be applied to situations involving warrantless searches.  Accordingly, in the instant case, a violation of the knock-and-announce rule does not merit suppression of evidence.

**III.    Conclusion**

In summary, the Court finds that the warrantless search of Defendant's residence does not violate the Fourth Amendment because law enforcement officials had reasonable suspicion for the search.  The Court also finds that, even when assuming the existence of a violation of the knock-and-announce rule based on Defendant's account of the events, suppression of the seized evidence is not appropriate.

**ACCORDINGLY, IT IS HEREBY ORDERED** that Defendant's motion to suppress [docket entry 13] is **DENIED**.

**SO ORDERED.**

Dated:    October 18, 2006                                s/Paul V. Gadola
                                                          HONORABLE PAUL V. GADOLA
                                                          UNITED STATES DISTRICT JUDGE

| Certificate of Service |
| --- |
| I hereby certify that on   October 18, 2006   , I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:<br>      David A. Koelzer; Richmond M. Riggs                                  , and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants: _____.<br><br><br>                                   s/Ruth A. Brissaud<br>                                   Ruth A. Brissaud, Case Manager<br>                                   (810) 341-7845 |